# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE CITY, A MUNICIPAL CORPORATION, et al., | ) ) ) ) ) | CIVIL ACTION FILE NO. 1:16-cv-03486-ELH |
| Plaintiffs / Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | |
| BROOKE ALLEN, et al., | ) ) | JURY TRIAL DEMANDED |
| Defendants / Counterclaim Plaintiffs. | ) ) | |

## ANSWER, DEFENSES, AND COUNTERCLAIM

Defendants Brooke Allen ("Ms. Allen"), Justin Allen ("Mr. Allen"), What Works Studio, LLC ("WWS"), and Light City, LLC (collectively the "Defendants") file and serve this their Answer and Defenses as follows:

### ANSWER

Defendants deny the allegations set forth in the unnumbered preamble or introduction contained on page numbers 2 and 3 of the Plaintiffs' Complaint

## Responding to "Parties"

### 1.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 1 of the Complaint and therefore deny the same.

### 2.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 2 of the Complaint and therefore deny the same.

### 3.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 3 of the Complaint and therefore deny the same.

### 4.

Admitted.

### 5.

Admitted.

### 6.

Admitted.

WCSR 37565117v6

7.

Defendants admit only that Ms. Allen is an owner of WWS.  Defendants deny the remaining allegations contained in paragraph no. 7 of the Complaint.

8.

Admitted.

9.

Defendants admit only that Ms. Allen and Mr. Allen are owners of Light City, LLC.  Defendants deny the remaining allegations contained in paragraph no. 9 of the Complaint.

## Responding to "Jurisdiction and Venue"

10.

Defendants admit that Ms. Allen and Mr. Allen reside in Maryland.  The remaining allegations contained in paragraph no. 10 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

11.

Defendants admit that WWS and Light City, LLC are organized under Maryland law and maintain their principal place of business in Maryland.  The remaining allegations contained in paragraph no. 11 of the Complaint are a

WCSR 37565117v6

statement and conclusion of law requiring no response from the Defendants and are therefore denied.

12.

The allegations contained in paragraph no. 12 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

13.

The allegations contained in paragraph no. 13 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

**Responding to "Allegations of Fact Common to All Claims"**

14.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 14 of the Complaint and therefore deny the same.

15.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 15 of the Complaint and therefore deny the same.

WCSR 37565117v6

16.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 16 of the Complaint and therefore deny the same.

17.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 17 of the Complaint and therefore deny the same.

18.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 18 of the Complaint and therefore deny the same.

19.

Defendants deny that Mr. Allen owns and operates WWS.  Defendants admit the remaining allegations contained in paragraph no. 19 of the Complaint.

20.

Defendants deny that Ms. Allen filed the Articles of Organization. Defendants admit the remaining allegations contained in paragraph no. 20 of the Complaint.

WCSR 37565117v6

21.

Denied.

22.

Denied.

23.

Denied.

24.

Denied.

25.

Denied.

26.

Denied.

27.

Denied.

28.

Denied.

29.

Denied.

WCSR 37565117v6

30.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 30 of the Complaint and therefore deny the same.

31.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 31 of the Complaint and therefore deny the same.

32.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 32 of the Complaint and therefore deny the same.

33.

Denied.

34.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 34 of the Complaint and therefore deny the same.

WCSR 37565117v6

35.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 35 of the Complaint and therefore deny the same.

36.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 36 of the Complaint and therefore deny the same.

37.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 37 of the Complaint and therefore deny the same.

38.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 38 of the Complaint and therefore deny the same.

39.

Paragraph no. 39 of the Complaint contains a typographical error such that it is incomprehensible.  As such, Defendants deny paragraph no. 39 of the Complaint.

WCSR 37565117v6

40.

Defendants admit only that Exhibit 2 to the Complaint is an accurate copy of the "Proposal for Light City Baltimore."  Defendants deny the remaining allegations contained in paragraph no. 40 of the Complaint.

41.

Defendants state that the content of the "Proposal for Light City Baltimore" speaks for itself.  As such, Defendants deny the allegations contained in paragraph no. 41 of the Complaint.

42.

Admitted.

43.

Denied.

44.

Defendants admit only that Exhibit 4 to the Complaint is an accurate copy of the "LIGHTCITYU LETTER OF AGREEMENT."  Defendants deny the remaining allegations contained in paragraph no. 44 of the Complaint.

45.

Defendants state that the content of the "LIGHTCITYU LETTER OF AGREEMENT" speaks for itself.  As such, Defendants deny the allegations contained in paragraph no. 45 of the Complaint.

- 9 -

46.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 46 of the Complaint and therefore deny the same.

47.

Denied.

48.

Denied.

49.

Denied.

50.

Defendants admit only that on or about July 31, 2015 they submitted a "LIGHT CITY WEBSITE PHASE II PROPOSAL" to Tracy Baskerville of BOPA. Defendants deny the remaining allegations contained in paragraph no. 50 of the Complaint.

51.

Defendants admit only that Exhibit 5 to the Complaint is an accurate copy of the "LIGHT CITY WEBSITE PHASE II PROPOSAL."  Defendants deny the remaining allegations contained in paragraph no. 51 of the Complaint.

WCSR 37565117v6

52.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 52 of the Complaint and therefore deny the same.

53.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 53 of the Complaint and therefore deny the same.

54.

Denied.

55.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 55 of the Complaint and therefore deny the same.

56.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 56 of the Complaint and therefore deny the same.

57.

Admitted.

58.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 58 of the Complaint and therefore deny the same.

59.

Denied.

60.

Denied.

61.

Defendants admit that WWS was been paid approximately $170,000 for work related to the LIGHT CITY Festival.  Defendants deny the remaining allegations contained in paragraph no. 61 of the Complaint.

62.

Denied.

63.

Denied.

64.

Denied.

WCSR 37565117v6

65.

Defendants admit that to the best of their knowledge that LIGHT CITY was the first festival of its kind held in the United States.  Defendants deny the remaining allegations contained in paragraph no. 65 of the Complaint.

66.

Defendants admit only that LIGHT CITY 2016 was successful.  Defendants deny the remaining allegations contained in paragraph no. 66 of the Complaint.

67.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 67 of the Complaint and therefore deny the same.

68.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 68 of the Complaint and therefore deny the same.

69.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 69 of the Complaint and therefore deny the same.

WCSR 37565117v6

70.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 70 of the Complaint and therefore deny the same.

71.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 71 of the Complaint and therefore deny the same.

72.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 72 of the Complaint and therefore deny the same.

73.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 73 of the Complaint and therefore deny the same.

74.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 74 of the Complaint and therefore deny the same.

WCSR 37565117v6

75.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 75 of the Complaint and therefore deny the same.

76.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 76 of the Complaint and therefore deny the same.

77.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 77 of the Complaint and therefore deny the same.

78.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 78 of the Complaint and therefore deny the same.

79.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 79 of the Complaint and therefore deny the same.

WCSR 37565117v6

80.

Defendants admit that they or some combination of them own the "LIGHT CITY Marks" as that term is defined in the Complaint.  Defendants deny that they have repeatedly claimed that neither BFAI nor BOPA have any ownership interest or right in the "LIGHT CITY Marks" but Defendants reserve the right to make such a claim.

81.

Denied.

82.

Defendants admit only that Exhibit 11 to the Complaint is a true and accurate copy of the "Articles of Organization" for Light City, LLC.  Defendants deny the remaining allegations contained in paragraph no. 82 of the Complaint.

83.

Denied.

84.

Admitted.

85.

Denied.

WCSR 37565117v6

86.

The allegations contained in paragraph no. 86 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

### Responding to "Count One, Lanham Act, 15 U.S.C. § 1125(a)"

87.

Defendants repeat and restate each of the foregoing paragraphs of their Answer and Defenses.

88.

Denied.

89.

Denied.

90.

Denied.

91.

Denied.

92.

Denied.

93.

Denied.

WCSR 37565117v6

94.

Denied.

95.

Denied.

96.

Denied.

97.

The allegations contained in paragraph no. 97 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

**Responding to "Count Two, Unfair Competition; Maryland law"**

98.

Defendants repeat and restate each of the foregoing paragraphs of their Answer and Defenses.

99.

Denied.

100.

Denied.

101.

Denied.

- 18 -

102.

Denied.

103.

Denied.

104.

Denied.

105.

Denied.

### Responding to "Relief Requested Under Both Claims"

Defendants deny that the Plaintiffs are entitled to any relief in this civil

action.

### DEFENSES

### First Defense

Plaintiffs have failed to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims are barred by the doctrine of unclean hands.

### Third Defense

Plaintiffs' claims are barred by the doctrines of estoppel and laches.

### Fourth Defense

Plaintiffs' claims are barred by the doctrine of fair use.

WCSR 37565117v6

## Fifth Defense

Plaintiffs' claims are barred because there is no trademark infringement.

Defendants can not infringe their own trademarks.

## Sixth Defense

Plaintiffs' claims are barred due to their acts of fraud or fraudulent

inducement.

## Seventh Defense

Plaintiffs' claims are barred because certain terms of alleged contracts put at

issue in the Complaint are ambiguous and unenforceable.

## Eighth Defense

Plaintiffs' claims are barred because certain terms of alleged contracts at

issue in the Complaint are ambiguous and should be construed against the

Plaintiffs.

## Ninth Defense

Plaintiffs' claims are barred because they are in breach of the alleged

contracts at issue in the Complaint.

## Tenth Defense

Defendants reserve the right to assert additional defenses that become

known to them during the pendency of this case.

WHEREFORE the Defendants respectfully pray that this Court:

(a)      dismiss each of Plaintiffs' claims with prejudice;

(b)      enter final judgment in favor of Defendants and against Defendants;

(c)      award the Defendants their fees and expenses incurred in defending this action; and

(d)      award the Defendants all other legal and equitable relief that is appropriate.

**DEFENDANTS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

## COUNTERCLAIMS

Counterclaim Plaintiffs Brooke Allen ("Ms. Allen"), Justin Allen ("Mr. Allen"), and What Works Studio, LLC ("WWS") (collectively the "Counterclaim Plaintiffs") and file and serve this their Counterclaims as follows:

### The Parties

1.

Ms. Allen is an individual citizen of the State of Maryland.

2.

Mr. Allen is an individual citizen of the State of Maryland.

3.

WWS is a limited liability company organized pursuant to the laws of the State of Maryland.  The sole member of WWS is Ms. Allen.

4.

Plaintiff Mayor and City Council of Baltimore City ("Mayor and City Council") alleges that it is a municipal corporation organized and operating under the laws of the State of Maryland.

5.

Plaintiff Baltimore Festival of the Arts, Inc. ("BFAI") alleges that it is a non-stock, non-profit corporation organized and operating under the laws of the State of

- 22 -

Maryland with its principal place of business at Ten East Baltimore Street, Tenth Floor, Baltimore, Maryland 21202.

6.

Plaintiff Baltimore Office of Promotion & The Arts, Inc. ("BOPA") alleges that it is a non-stock, not-for-profit corporation organized and operating under the laws of the State of Maryland with its principal place of business at Ten East Baltimore Street, Tenth Floor, Baltimore, Maryland 21202.

7.

This Court has subject matter jurisdiction over these Counterclaims.

8.

This Court is an appropriate venue for these Counterclaims.

9.

Mayor and City Council, BFAI, and BOPA (collectively the "Counterclaim Defendants") are subject to the personal jurisdiction of this Court.

**Factual Allegations**

10.

Beginning in March 2010, Ms. Allen and Mr. Allen (collectively the "Allens") conceptualized a festival to take place in the City of Baltimore that would bring together public art light installations, innovation conferences, and live music.

- 23 -

11.

The Allens' concept for the public art light installation component of the festival was to bring to Baltimore displays similar to those used in light festivals held in Sydney, Australia, Berlin, Germany, and Kobe, Japan.

12.

The Allens' concept for the innovation conference component of the festival was to bring progressive thought leaders to Baltimore to lead presentations and participate in panels similar to those held at events like South by Southwest (SXSW) in Austin, Texas and PopTech in Camden, Maine.

13.

The Allens further conceptualized that live music would be presented throughout the festival.

14.

On August 2, 2013, the Allens came up with the name, LIGHT CITY, for a new festival in Baltimore.

15.

The Allens believed that the LIGHT CITY brand could also be used for similar festivals that they would organize in other cities.

16.

On August 14, 2013, the Allens purchased the domain name "lightcity.us."

17.

On August 19, 2013, the Allens had their first telephone call with John Cammack who was a potential investor or sponsor of the LIGHT CITY festival and followed that telephone call up with an in-person meeting at the Stone Mill Bakery on September 3, 2013.

18.

Over the ensuing months, the Allens had numerous meetings with various prominent investors or sponsors for LIGHT CITY, including many prominent Baltimore citizens, businesses, and foundations, including, without limitation Baltimore Gas & Electric Company, the CEO of LifeBridge Health, the Warnock Foundation, and the Abell Foundation.

19.

On September 5, 2013, the Allens published a brochure describing the plans for the LIGHT CITY festival.  Between September 2013 and July 2014 the Allens presented the brochure and their plans for the LIGHT CITY festival in approximately sixty-five (65) different meetings with groups such as potential sponsors, investors, and partners and media members.

20.

A true and correct copy of the brochure described in the preceding paragraph is attached hereto as Exhibit "A."

21.

On October 28, 2013, the Allens participated in a Skype call with Ignatius Jones, an internationally known light festival director from Sydney, Australia, to discuss the LIGHT CITY festival.

22.

On November 7, 2013, the Allens met with Carolyn Blakeney, the Chief of Staff at the Baltimore City Council's President's Office, to present their plans for the LIGHT CITY festival.

23.

On December 19, 2013, Mr. Allen formed Light City, LLC in the State of Maryland ("Light City, LLC I"). The Allens were owners of Light City, LLC I. Light City, LLC I has since been dissolved.

24.

Light City, LLC I is not the Defendant identified in Plaintiffs' Complaint. The Defendant Light City, LLC was formed on July 21, 2016 ("Light City, LLC II"). Light City, LLC II is currently an active business entity with the Maryland Secretary of State. The members of Light City, LLC II are the Allens.

- 26 -

25.

On December 23, 2013, the Allens received the first verbal sponsorship commitment for the LIGHT CITY festival from LifeBridge Health which ultimately turned into a $25,000 sponsorship.

26.

On December 28, 2013 at 10:38 AM EST, the Allens published a video available at https://vimeo.com/82834095 titled "Say Hello to Light City" which explained their plans for the LIGHT CITY festival.

27.

In December 2013, the Allens secured and launched: (i) the LIGHT CITY Facebook page facebook.com/lightcitybaltimore; and (ii) the Twitter profile which is now called twitter.com/lightcitybmore but was originally called twitter.com/lightcityus.

28.

On January 13, 2014, the Allens launched the lightcity.us website.  The initial lightcity.us website can be viewed at:

https://web.archive.org/web/20140113015444/http://lightcity.us/

29.

The screenshot of the original lightcity.us website is attached hereto as Exhibit "B."

30.

On January 22, 2014, the Allens met with the Executive Director of the Waterfront Partnership of Baltimore ("Waterfront"), Laurie Schwartz, to discuss the plans for the Light City festival.  At the meeting, Waterfront offered to be the non-profit fiscal sponsor of the LIGHT CITY festival.

31.

On January 24, 2014, the Allens presented the plans for the LIGHT CITY festival to the Abell Foundation.

32.

On January 30, 2014, the Allens presented the plans for the LIGHT CITY festival at the Baltimore Social Innovation Journal pitch presentation organized by the Warnock Foundation.  Light City, LLC I was awarded two separate unrestricted grants by the Warnock Foundation in the amounts of $1,000 and $5,000, respectively.

33.

On February 3, 2014, the Allens presented the plans for the LIGHT CITY festival to then-Baltimore City Councilman William Cole.

34.

On February 5, 2014, Waterfront submitted a $250,000 grant proposal to the Abell Foundation in its capacity as the initial non-profit fiscal sponsor for the Light CITY festival.

35.

A true and correct copy of Waterfront's submission letter is attached hereto as Exhibit "C."

36.

On February 21, 2014, the Abell Foundation began providing $20,000 in funding to Light City, LLC I to organize the Light City festival, specifically to hire Ignatius Jones as a consultant.

37.

A true and correct copy of the letter from the Abell Foundation dated February 21, 2014 to Ms. Allen related to the $20,000 in funding is attached hereto as Exhibit "D."

38.

On March 7, 2014, Light City, LLC I signed a contract with Warehouse Pty Ltd an Australian management agency, to engage Ignatius Jones as a consultant.

39.

A true and correct copy of the contract for Mr. Jones' services is attached hereto as Exhibit "E."

40.

On March 24, 2014, Mr. Jones travelled to Baltimore to provide consulting services for the LIGHT CITY festival.

41.

On March 25, 2014, the Allens and Mr. Jones presented the plans for the LIGHT CITY festival to Baltimore Gas & Electric Company.

42.

On March 26, 2014, the Allens and Mr. Jones presented the plans for the LIGHT CITY festival to the Abell Foundation, Waterfront's Executive Committee and Visit Baltimore.

43.

On March 28, 2014, the Allens organized and hosted a LIGHT CITY festival reception for Mr. Jones and sponsors and potential sponsors at the Wit and Wisdom restaurant located at the Four Seasons Hotel Baltimore.  Attendees at this reception included representatives of many prominent companies, non-profits and foundations, and the Baltimore government, including without limitation the Abell Foundation, the Warnock Foundation, the Barnycz Group, the Mayor's Office of

Economic Development, Ayers Saint Gross, Brown Craig Turner, Cordish
Companies, Greater Baltimore Cultural Alliance, Baltimore Museum of Art,
Charles Street Development Corporation, Choose Maryland, Camden Partners,
Living Classrooms, Waterfront, Feats, Inc., EventEQ, Baltimore Angels, Baltimore
Emergency Management, GiveCorps, Regional Manufacturing Institute, ABS
Capital, and 3D Maryland.

44.

On March 30, 2014, the Allens and Mr. Jones discussed LIGHT CITY for
the first time with Bill Gilmore, the executive director of BOPA.

45.

On April 1, 2014, the Allens emailed a sponsorship proposal to Baltimore
Gas & Electric Company to be a lead sponsor of the LIGHT CITY festival.
Ultimately, Baltimore Gas & Electric Company sponsored the Light City festival
in the amount of $1,250,000.00 over two (2) years.

46.

Without the involvement of the Counterclaim Defendants, the Allens
secured leads that turned in to over $3,000,000.00 in sponsorship for the LIGHT
CITY festival over multiple years, including, without limitation, from Baltimore
Gas & Electric Company, Visit Baltimore, the Abell Foundation, and LifeBridge
Health.

- 31 -

47.

Waterfront arranged a meeting between the Allens and BOPA on July 14, 2014.  Attending this meeting from BOPA were Bill Gilmore, Kathy Hornig, Rosalind Healy, Randy Vega, and Ryan Patterson.

48.

At the July 14, 2014 meeting with BOPA, the Allens made the same presentation related to the plans for the LIGHT CITY festival that they had given to other organizations.

49.

The BOPA representatives present at the July 14, 2014 meeting with the Allens expressed interest in the LIGHT CITY festival and suggested that discussions about the LIGHT CITY festival between the parties continue.

50.

The Allens met with BOPA again on August 7, 2014 at BOPA's office. Additional meetings between the Allens and BOPA took place in September and October 2014.  Beginning in November 2014, the Allens and BOPA began a weekly recurring meeting to discuss the LIGHT CITY festival.

51.

Although BOPA had not become formally involved with the LIGHT CITY festival, on November 6, 2014, the Allens met Bill Gilmore at his home before the

- 32 -

Allens, Bill Gilmore, and Laurie Schwartz were scheduled to meet with Michael Crier, a board member of Baltimore Gas & Electric Company, to discuss fundraising for the LIGHT CITY festival.

52.

During their continuing meetings prior to December 14, 2014, Bill Gilmore proposed that BFAI could take on the role of the fiduciary agent or sponsor for the LIGHT CITY festival and that BOPA could be a production "partner" for the public art portion of the festival.

53.

During the continuing meetings, Bill Gilmore repeatedly represented to the Allens that they would produce and continue to own the innovation conferences if the Counterclaim Defendants became involved with producing certain aspects of the LIGHT CITY festival.

54.

During the continuing meetings, Bill Gilmore represented that BOPA did not have interest in the innovation conferences associated with the LIGHT CITY festival.  Bill Gilmore represented explicitly that all of BOPA's events are free and open to the public and that BOPA had no interest in being involved with ticketed events like the innovation conferences.

WCSR 37565117v6

55.

During the continuing meetings, Bill Gilmore also repeatedly referred to the relationship of the Allens and BOPA as a "marriage" and also represented that BOPA and the Allens would enter into a "partnership" related to the LIGHT CITY festival in which partnership the Allens would have complete control over the innovation conferences while BOPA would concentrate its efforts on producing the public art installations and the music component of the LIGHT CITY festival.

56.

On December 14, 2014, Ms. Allen presented the plans for the Light City festival to the combined boards of BOPA and BFAI.  Bill Gilmore also made a presentation to the combined boards recommending that BFAI become the fiscal agent for the LIGHT CITY festival.

57.

The minutes of the December 14, 2014 board meeting reflect that the Allens are the "visionary founders" of the LIGHT CITY festival, that BFAI would be the "fiduciary" or fiduciary agent for the festival, and that WWS would own the LCB [LIGHT CITY BALTIMORE] URL's (or domain names).

- 34 -

58.

The board minutes are consistent with the understanding of everyone involved that the intellectual property related to the LIGHT CITY festival was the property of the Allens.

59.

The minutes of the December 14, 2014 board meeting also memorialize that Bill Gilmore stated "[t]he division of duties will help [the Allens] business through the innovation component" which is consistent with the understanding of everyone involved that the Allens would produce the innovation conferences.

60.

In a February 2, 2016 Baltimore Business Journal article Bill Gilmore is quoted as acknowledging that BOPA generally creates events in-house, but that LIGHT CITY is unique because it is a "project developed by private citizens" which is a statement consistent with the understanding of everyone involved that the Allens owned the intellectual property related to the LIGHT CITY festival.

61.

The Allens would have never permitted the Counterclaim Defendants to be involved in the LIGHT CITY festival in any way, and certainly not as a fiduciary agent and responsible for producing any portion of the Light City festival, if they would not have continued ownership over the innovation conferences.

- 35 -

62.

The Allens intend that the innovation conferences are a for profit enterprise that will permit them to earn income related to the LIGHT CITY festival in Baltimore as well as similar LIGHT CITY festivals that may be held in other cities.

63.

On April 24, 2015, the Allens created the name LIGHTCITYU for the innovation conferences without the involvement of the Counterclaim Defendants. That same day, Ms. Allen purchased the lightcityu.com and lightcityu.org domain names.

64.

On April 27, 2015, Ms. Allen designed the logo for LIGHTCITYU.

65.

On September 11, 2015, Ms. Allen released the logo to the public for the LIGHTCITYU innovation conferences for the first time on the LIGHTCITYU Facebook page which the Allens started.

66.

Toward the end of 2015, the relationship between the Allens and the Counterclaim Defendants began to sour.  For example, the Counterclaim Defendants barred the Allens from speaking at the first press conference for the

LIGHT CITY festival, did not include them in fundraising meetings, and otherwise began to take steps to diminish their role without speaking to the Allens.

67.

The actions of the Counterclaim Defendants in excluding the Allens from events are consistent with their plan to wrest control of the LIGHT CITY festival from the Allens and expropriate the intellectual property related to the LIGHT CITY festival for their own use.

68.

On January 20, 2016, the Allens met with various representatives of the Counterclaim Defendants at BOPA's office. At this meeting, Bill Gilmore, Kathy Hornig, and Chuck Adkins of BOPA informed the Allens that the Counterclaim Defendants would not "permit" the Allens to produce or have an ownership stake in the LIGHTCITYU innovation conferences because they had been informed by the "City" that the Counterclaim Defendants would need to take control and own all aspects of the LIGHT CITY festival. During this meeting Bill Gilmore referred to a signed proposal executed by BFAI on July 22, 2015 entitled "LIGHTCITYU LETTER OF AGREEMENT" and stated repeatedly that the document "means nothing."

69.

The position taken by the representatives of the Counterclaim Defendants at the January 20, 2016 meeting is inconsistent with the many representations described herein made by the Counterclaim Defendants and their representatives related to the relationship of the Counterclaim Plaintiffs and Counterclaim Defendants.

70.

The inaugural LIGHT CITY festival and LIGHTCITYU innovation conference took place between March 28 and April 3, 2016 in Baltimore.

71.

On May 11, 2016, the Allens received an email from Bill Gilmore in which he informed them that BOPA intended "to bring the conference booking in house using BOPA staff for 2017." In other words, Bill Gilmore informed the Allens that they would have no more involvement with producing the innovation conferences for the LIGHT CITY festival going forward. In addition, without informing the Allens, they were removed from the LIGHT CITY steering committee, the LIGHT CITY chairman's council, the LIGHT CITY innovation subcommittee, and the LIGHT CITY marketing and communications subcommittee. Additionally, WWS was removed as a BFAI board member.

72.

The Counterclaim Defendants had no right to inform the Allens that they would be barred from being involved in a festival that they organized and of which they owned the intellectual property rights.

73.

The Counterclaim Defendants have willfully and improperly asserted control over the LIGHT CITY trademark owned by the Allens and all derivations thereof such as LIGHT CITY BALTIMORE, LIGHTCITYU, and LABS@LIGHT CITY (collectively the "LIGHT CITY Marks") and are infringing upon the Allens' LIGHT CITY Marks by organizing and promoting the 2017 LIGHT CITY festival in Baltimore without permission or license to use the LIGHT CITY Marks.

74.

Further, the Counterclaim Defendants have violated the Allens' rights by commandeering the LIGHT CITY festival social media accounts created, nurtured, and grown by the Allens.  With regard to the LightCityU Facebook, Instagram, and Twitter accounts, the Counterclaim Defendants even gained control over the accounts changed the name of the accounts to "labslightcity," "labsatlightcity," and "@lightcitylabs," respectively, without the authorization of the Allens which is a source of serious confusion to the public.

WCSR 37565117v6

75.

The Counterclaim Defendants have stopped referring to the innovation conferences as LIGHTCITYU and are now referring to the innovation conferences as "Labs@LightCity" and intend to begin selling tickets on November 11, 2016 to the rebranded "Labs@LightCity" without the consent of the Allens.

76.

The Allens have received substantial press coverage related to their roles with the LIGHT CITY festival including in multiple articles in the Baltimore Sun, Baltimore Magazine, and the Baltimore Business Journal, as well as in television media, and various internet publications.  Further, the Allens have won awards for the LIGHT CITY festival including the Baltimore Innovation Awards "Artist/Creative Group of the Year" for 2015.  The media coverage and awards received by the Allens have the effect of associating them with the LIGHT CITY festival as the founders or owners.

77.

BFAI has failed and refused to pay WWS for work that it requested that WWS perform in BFAI's capacity as the fiduciary agent for the 2016 LIGHT CITY festival.

## COUNT I
## Lanham Act, 15 U.S.C. § 1125(a)
## (Allens v. Counterclaim Defendants)

78.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

79.

The Allens own common law trademark rights in the LIGHT CITY Marks throughout the United States and the State of Maryland.

80.

The Allens have a real and substantial interest in having this Court determine that they own the LIGHT CITY Marks so as to protect the ability of the Allens to make use of the LIGHT CITY Marks in connection with Light City festivals held in Baltimore and that may be held in other cities in the future.

81.

The LIGHT CITY Marks that the Allens own are distinctive when used in connection with light festivals and related innovation conference events by virtue of the exclusive and extensive use of the LIGHT CITY Marks in commerce by the Allens and the association of the public of the Allens with the LIGHT CITY festival due to the substantial media coverage and awards that the Allens have received related to the LIGHT CITY festival.

- 41 -

82.

The expropriation, copying, imitation, and use of the LIGHT CITY Marks owned by the Allens by the Counterclaim Defendants to promote a Light City festival in Baltimore is without the permission, license, or authority of the Allens.

83.

The activities of the Counterclaim Defendants in using, imitating, and copying the LIGHT CITY Marks owned by the Allens is likely to and has already lead to and resulted in consumer confusion, mistake, and deception, and is likely to cause and is already causing consumers to believe that the Counterclaim Defendants own the LIGHT CITY Marks, while simultaneously causing consumers to believe that the Allens have authorized, licensed, or are otherwise connected or affiliated with Counterclaim Defendants' business activities all to the detriment of the Allens.

84.

The acts of the Counterclaim Defendants violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.

The acts of the Counterclaim Defendants in using, imitating, and copying the LIGHT CITY Marks owned by the Allens as alleged herein are and continue to be willful.

86.

As a direct and proximate result of the conduct of the Counterclaim Defendants the Allens have sustained and will continue to sustain substantial damages.

87.

As a direct and proximate result of the conduct of the Counterclaim Defendants the Allens will continue to sustain irreparable injury for which no adequate remedy at law exists.

88.

An actual controversy with regard to the ownership of the LIGHT CITY Marks exists within the meaning of 28 U.S.C. § 2201.

**COUNT II**
**Unfair Competition Under Maryland Law**
**(Allens v. Counterclaim Defendants)**

89.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

90.

The Allens own common law trademark rights in the LIGHT CITY Marks throughout the United States and the State of Maryland.

WCSR 37565117v6

91.

The Allens have a real and substantial interest in preventing unfair competition that causes confusion among the public with regard to the LIGHT CITY Marks.

92.

The conduct of the Counterclaim Defendants of expropriating the LIGHT CITY Marks as their own and claiming exclusive ownership of the LIGHT CITY Marks for the purpose of trading off the reputation and goodwill of the Allens is likely to cause confusion among the public and damage to the reputation of the Allens, and is likely to damage the good will that the Allens have developed in the LIGHT CITY Marks.

93.

The acts of the Counterclaim Defendants as alleged herein constitute unfair competition under Maryland law.

94.

The acts of the Counterclaim Defendants in using, imitating, and copying the LIGHT CITY Marks as alleged herein are and continue to be willful.

95.

As a direct and proximate result of the conduct of the Counterclaim Defendants, the Allens have sustained and will continue to sustain substantial damages.

96.

As a direct and proximate result of the conduct of the Counterclaim Defendants, the Allens have sustained and will continue to sustain irreparable injury for which no adequate remedy at law exists.

**COUNT III**
**Trademark Infringement Under Maryland Law**
**(Allens v. Counterclaim Defendants)**

97.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

98.

As described above, the Allens own all rights, title, and interest in and to the LIGHT CITY Marks.

99.

As described above, the LIGHT CITY Marks are distinctive and the Allens have built up valuable goodwill in the LIGHT CITY Marks.

WCSR 37565117v6

100.

The Counterclaim Defendants' use of the LIGHT CITY Marks infringes the Allens' rights therein and has will continue to cause confusion, mistake, or deception among consumers as to the source, sponsorship, and origin of the LIGHT CITY festival that the Counterclaim Defendants intend to hold in 2017 and are actively promoting.

101.

The Counterclaim Defendants' conduct deceives or is likely to deceive, and has caused and is likely to continue to cause, confusion or mistake among actual and prospective customers of the LIGHT CITY festival by passing off the Counterclaim Defendants' event as having been sponsored or otherwise approved or connected with the Allens.

102.

As a direct and proximate result of the Counterclaim Defendants' infringement of the Allens' common law trademark rights under the State of Maryland and other common law, the Allens have sustained and are likely to continue to sustain monetary damages and irreparable injury to their business, reputation, and goodwill.

103.

The Allens have no adequate remedy at law.

WCSR 37565117v6

104.

By reason of the foregoing acts, the Counterclaim Defendants are liable to the Allens for trademark infringement and the Allens are therefore entitled to permanent injunctive relief and monetary damages, including punitive damages by reason of the Counterclaim Defendants' willful, reckless, deliberate, and intentional conduct.

**COUNT IV**
**Unfair Trade Practices Under Md. Code Com. Law § 13-301, et seq.**
**(Allens v. Counterclaim Defendants)**

105.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

106.

As described above, Counterclaim Defendants have engaged in unfair or deceptive trade practices by making, in the course of selling and offering to sell Counterclaim Defendant's products, false, falsely disparaging, and misleading statements, visual descriptions, and other representations which have the capacity, tendency, or effect of deceiving or misleading consumers.

107.

As described above, Counterclaim Defendants have engaged in unfair or deceptive trade practices by representing to consumers, in the course of selling and

WCSR 37565117v6

offering to sell Counterclaim Defendants' products, that Counterclaim Defendants' products have a source, sponsorship, and characteristic that they do not have and that Counterclaim Defendants' products are of a standard, quality, grade, style, and model which they are not.

108.

Counterclaim Defendants' false and misleading representations and deceptive conduct are material in that the same have caused and are likely to cause prospective consumers of the Allens' and Counterclaim Defendants' products to be deceived as to the source, sponsorship, characteristics, status, affiliation, connection, standard, quality, grade, style, and model of the Allens' products and Counterclaim Defendants' products, or as to the identity of the person to whom rights belong.

109.

By reason of Counterclaim Defendants' unfair and deceptive trade practices as defined by Section 13-301 of Maryland's Consumer Protection Act, Counterclaim Defendants have violated Section 13-303 of Maryland's Consumer Protection Act.

- 48 -

110.

As a direct and proximate result of said unfair and deceptive trade practices, the Allens, as well as consumers, have sustained and are likely to continue to sustain damages.

111.

The Allens have no adequate remedy at law.

112.

Pursuant to Sections 13-406 and 13-408 of Maryland's Consumer Protection Act, the Allens are entitled to enjoin the Counterclaim Defendants' unlawful conduct as well as obtain compensatory damages, punitive damages, and attorney's fees.

**COUNT V**
**Unjust Enrichment**
**(Allens v. Counterclaim Defendants)**

113.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

114.

The Allens have been denied financial compensation in connection with Counterclaim Defendants' use of the LIGHT CITY Marks.

- 49 -

115.

The Counterclaim Defendants have been enriched and will continue to be enriched by their use of the LIGHT CITY Marks in connection with the LIGHT CITY festival in such a manner that the goodwill embodied by the Allens' LIGHT CITY Marks has inured to the benefit of the Counterclaim Defendants. The circumstances are such that equity and good conscience require the Counterclaim Defendants to make restitution to the Allens in an amount to be proven at trial.

**COUNT VI**
**Fraud / Fraudulent Inducement**
**(Counterclaim Plaintiffs v. Counterclaim Defendants)**

116.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

117.

The Allens created the name "Light City" for the Light City festival in Baltimore and own common law trademark rights in the LIGHT CITY Marks and all derivations thereof throughout the United States and the State of Maryland by virtue of their first use of the LIGHT CITY Marks in commerce.

118.

In order to induce the Allens into allowing BFAI to serve as the fiduciary agent for the LIGHT CITY festival, the Counterclaim Defendants acting through

Bill Gilmore falsely represented that BOPA had no interest in taking ownership of the innovation conferences at the LIGHT CITY festival, referred to the relationship between the Counterclaim Defendants and the Allens as a "marriage", and that the parties would enter into a "partnership" related to the LIGHT CITY festival which partnership would permit the Allens to have complete control over the innovation conferences.

119.

The Counterclaim Defendants knew that the statements made by Bill Gilmore acting on their behalf were false and that the Counterclaim Defendants intended to expropriate the Allens' LIGHT CITY festival and related intellectual property including the LIGHT CITY Marks for their own use once they were able to become involved in LIGHT CITY.

120.

The statements made by Bill Gilmore were made for the purpose of defrauding the Allens and WWS, specifically to obtain access to and assert control over the LIGHT CITY festival and LIGHT CITY Marks that the Counterclaim Defendants did not own and to induce WWS into submitting various proposals to BFAI for work related to the LIGHT CITY festival.

121.

The Allens and WWS relied on Bill Gilmore's false statements and had the right to rely upon those statements in the full belief of their truth.  The Allens never would have permitted BFAI to become the fiduciary agent for the LIGHT CITY festival or BOPA to become involved in the LIGHT CITY festival at all and WWS would never have submitted proposals to work on the LIGHT CITY festival but for these misrepresentations.

122.

Due to the Counterclaim Defendants' acts of fraud, the Counterclaim Plaintiffs have suffered damage directly resulting from the fraudulent misrepresentations in an amount to be determined at the trial of this action.  This fraud also invalidates any proposals that WWS may have entered into with the Counterclaim Defendants.

123.

Further, the Counterclaim Plaintiffs are entitled to recover punitive damages form the Counterclaim Defendants due to their acts of fraud which were deliberate and done with evil motive.

## COUNT VII
## Quantum Meruit
## (Counterclaim Plaintiffs v. Counterclaim Defendants)

### 124.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

### 125.

The Counterclaim Plaintiffs conferred numerous benefits upon the Counterclaim Defendants related to the 2016 LIGHT CITY festival.

### 126.

The Counterclaim Defendants appreciated and knew that the Counterclaim Defendants were conferring benefits upon them related to the LIGHT CITY festival.

### 127.

The Counterclaim Defendants accepted and retained the benefits conferred upon them by the Counterclaim Plaintiffs such as to make it inequitable for the Counterclaim Defendants to retain the benefits conferred upon them related to the LIGHT CITY festival without the benefit of its value.

### 128.

The Counterclaim Plaintiffs are entitled to recover damages from the Counterclaim Defendants to be determined by a jury at the trial of this action

WCSR 37565117v6

related to the improper retention of the benefits conferred upon them related to the

LIGHT CITY festival by the Counterclaim Defendants.

## COUNT VIII
## Civil Conspiracy
## (Counterclaim Plaintiffs v. Counterclaim Defendants)

### 129.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the

preceding paragraphs of their Counterclaims.

### 130.

The Counterclaim Defendants formed a confederation by agreement or

understanding to: (i) defraud and expropriate from the Allens the LIGHT CITY

Marks and assert control over the LIGHT CITY festival that the Allens had

conceptualized and organized by intentionally and willfully misrepresenting to the

Allens that the parties would engage in a "partnership" or "marriage" related to the

LIGHT CITY festival in which the Allens would retain full control over the

innovation conferences; and (ii) fraudulently induce WWS into submitting various

proposals to BFAI as the fiduciary sponsor for the LIGHT CITY festival despite

the fact that the Counterclaim Defendants had no intention of compensating WWS

in full for the work that it performed related to the LIGHT CITY festival.

131.

The Counterclaim Plaintiffs have been actually damaged by the tortious acts perpetrated by the Counterclaim Defendants in furtherance of their conspiracy to expropriate the LIGHT CITY Marks, gain control of the LIGHT CITY festival, and receive work requested from WWS without paying for it.  The Counterclaim Plaintiffs are entitled to recover theses damages and punitive damages in an amount to be determined by a jury at the trial of this action.

WHEREFORE the Counterclaim Plaintiffs respectfully request that this Court:

(a)     Enter judgment against the Counterclaim Defendants on each of the claims set forth in these Counterclaims; and

(b)     Permanently enjoin the Counterclaim Defendants and their respective officers, directors, and agents from: (i) infringing or using the LIGHT CITY Marks or any mark confusingly similar thereto in connection with the advertising, promotion, offering for sale, or sale of any product or service; (ii) unfairly competing with the Allens; and (iii) using or attempting to use any social media accounts or websites, or interfering with the use of any social media accounts or websites related to the LIGHT CITY festival; and

(c)     Order that the Counterclaim Defendants return control of all social media accounts created by the Counterclaim Plaintiffs to the Counterclaim Plaintiffs; and

(d)     Award compensatory damages to the Counterclaim Plaintiffs in an amount to be determined at trial; and

(e)     Award punitive damages to the Counterclaim Plaintiffs in an amount to be determined at trial; and

(f)     Award costs and attorneys' fees to the Counterclaim Plaintiffs; and

(g)     Enter a judgment declaring that the Allens are the exclusive owners of all rights in the LIGHT CITY Marks throughout the United States and that the Counterclaim Defendants have no rights whatsoever in the LIGHT CITY Marks; and

(h)     Award the Counterclaim Plaintiffs all such other and further relief as the Court deems just and proper.

## COUNTERCLAIM PLAINTIFFS DEMAND
## A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted this 11th day of November, 2016.

WCSR 37565117v6

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Julie A. Hopkins
Fed. Bar. No. 28025

100 Light Street
26th Floor
Baltimore, Maryland 21202
Telephone:  (410) 545-5800
Facsimile:  (410) 545-5801
Email:       jahopkins@wcsr.com

OF COUNSEL:

Arthur A. Ebbs
*Motion for Admission Pro Hac Vice Forthcoming*

271 17th Street NW
Suite 2400
Atlanta, Georgia 30363
Telephone:  (404) 872-7000
Facsimile:  (404) 888-7490
Email:       aebbs@wcsr.com

**Attorneys for Defendants / Counterclaim Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Matthew Nayden
Matthew.nayden@baltimorecity.gov

William Alden McDaniel, Jr.
mcdanielw@ballardspahr.com

This 11th day of November, 2016.

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

/s/ Julie A. Hopkins
Fed. Bar. No. 28025