# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE CITY, A MUNICIPAL CORPORATION, et al., | ) ) ) ) ) | CIVIL ACTION FILE NO. 1:16-cv-03486-ELH |
| Plaintiffs / Counterclaim Defendants, | ) ) | |
| | ) | |
| v. | ) ) | |
| BROOKE ALLEN, et al., | ) ) | |
| Defendants / Counterclaim Plaintiffs. | ) ) | |

## AMENDED ANSWER, DEFENSES, AND COUNTERCLAIM

Defendants Brooke Allen ("Ms. Allen"), Justin Allen ("Mr. Allen"), What Works Studio, LLC ("WWS"), and Light City, LLC (collectively the "Defendants") file and serve this their Amended, Answer, Defenses, and Counterclaim as follows:

## ANSWER

Defendants deny the allegations set forth in the unnumbered preamble or introduction contained on page numbers 2 and 3 of the Plaintiffs' Complaint

## Responding to "Parties"

### 1.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 1 of the Complaint and therefore deny the same.

### 2.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 2 of the Complaint and therefore deny the same.

### 3.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 3 of the Complaint and therefore deny the same.

### 4.

Admitted.

### 5.

Admitted.

### 6.

Admitted.

WCSR 38105066v7

7.

Defendants admit only that Ms. Allen is an owner of WWS.  Defendants deny the remaining allegations contained in paragraph no. 7 of the Complaint.

8.

Admitted.

9.

Defendants admit only that Ms. Allen and Mr. Allen are owners of Light City, LLC.  Defendants deny the remaining allegations contained in paragraph no. 9 of the Complaint.

## Responding to "Jurisdiction and Venue"

10.

Defendants admit that Ms. Allen and Mr. Allen reside in Maryland.  The remaining allegations contained in paragraph no. 10 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

11.

Defendants admit that WWS and Light City, LLC are organized under Maryland law and maintain their principal place of business in Maryland.  The remaining allegations contained in paragraph no. 11 of the Complaint are a

- 3 -

statement and conclusion of law requiring no response from the Defendants and are therefore denied.

12.

The allegations contained in paragraph no. 12 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

13.

The allegations contained in paragraph no. 13 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

**Responding to "Allegations of Fact Common to All Claims"**

14.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 14 of the Complaint and therefore deny the same.

15.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 15 of the Complaint and therefore deny the same.

WCSR 38105066v7

16.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 16 of the Complaint and therefore deny the same.

17.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 17 of the Complaint and therefore deny the same.

18.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 18 of the Complaint and therefore deny the same.

19.

Defendants deny that Mr. Allen owns and operates WWS.  Defendants admit the remaining allegations contained in paragraph no. 19 of the Complaint.

20.

Defendants deny that Ms. Allen filed the Articles of Organization. Defendants admit the remaining allegations contained in paragraph no. 20 of the Complaint.

WCSR 38105066v7

21.

Denied.

22.

Denied.

23.

Denied.

24.

Denied.

25.

Denied.

26.

Denied.

27.

Denied.

28.

Denied.

29.

Denied.

30.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 30 of the Complaint and therefore deny the same.

31.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 31 of the Complaint and therefore deny the same.

32.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 32 of the Complaint and therefore deny the same.

33.

Denied.

34.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 34 of the Complaint and therefore deny the same.

WCSR 38105066v7

35.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 35 of the Complaint and therefore deny the same.

36.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 36 of the Complaint and therefore deny the same.

37.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 37 of the Complaint and therefore deny the same.

38.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 38 of the Complaint and therefore deny the same.

39.

Paragraph no. 39 of the Complaint contains a typographical error such that it is incomprehensible.  As such, Defendants deny paragraph no. 39 of the Complaint.

WCSR 38105066v7

40.

Defendants admit only that Exhibit 2 to the Complaint is an accurate copy of the "Proposal for Light City Baltimore."  Defendants deny the remaining allegations contained in paragraph no. 40 of the Complaint.

41.

Defendants state that the content of the "Proposal for Light City Baltimore" speaks for itself.  As such, Defendants deny the allegations contained in paragraph no. 41 of the Complaint.

42.

Admitted.

43.

Denied.

44.

Defendants admit only that Exhibit 4 to the Complaint is an accurate copy of the "LIGHTCITYU LETTER OF AGREEMENT."  Defendants deny the remaining allegations contained in paragraph no. 44 of the Complaint.

45.

Defendants state that the content of the "LIGHTCITYU LETTER OF AGREEMENT" speaks for itself.  As such, Defendants deny the allegations contained in paragraph no. 45 of the Complaint.

WCSR 38105066v7

46.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 46 of the Complaint and therefore deny the same.

47.

Denied.

48.

Denied.

49.

Denied.

50.

Defendants admit only that on or about July 31, 2015 they submitted a "LIGHT CITY WEBSITE PHASE II PROPOSAL" to Tracy Baskerville of BOPA. Defendants deny the remaining allegations contained in paragraph no. 50 of the Complaint.

51.

Defendants admit only that Exhibit 5 to the Complaint is an accurate copy of the "LIGHT CITY WEBSITE PHASE II PROPOSAL."  Defendants deny the remaining allegations contained in paragraph no. 51 of the Complaint.

WCSR 38105066v7

52.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 52 of the Complaint and therefore deny the same.

53.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 53 of the Complaint and therefore deny the same.

54.

Denied.

55.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 55 of the Complaint and therefore deny the same.

56.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 56 of the Complaint and therefore deny the same.

57.

Admitted.

WCSR 38105066v7

58.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 58 of the Complaint and therefore deny the same.

59.

Denied.

60.

Denied.

61.

Defendants admit that WWS was been paid approximately $170,000 for work related to the LIGHT CITY Festival. Defendants deny the remaining allegations contained in paragraph no. 61 of the Complaint.

62.

Denied.

63.

Denied.

64.

Denied.

65.

Defendants admit that to the best of their knowledge that LIGHT CITY was the first festival of its kind held in the United States.  Defendants deny the remaining allegations contained in paragraph no. 65 of the Complaint.

66.

Defendants admit only that LIGHT CITY 2016 was successful.  Defendants deny the remaining allegations contained in paragraph no. 66 of the Complaint.

67.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 67 of the Complaint and therefore deny the same.

68.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 68 of the Complaint and therefore deny the same.

69.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 69 of the Complaint and therefore deny the same.

70.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 70 of the Complaint and therefore deny the same.

71.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 71 of the Complaint and therefore deny the same.

72.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 72 of the Complaint and therefore deny the same.

73.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 73 of the Complaint and therefore deny the same.

74.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 74 of the Complaint and therefore deny the same.

75.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 75 of the Complaint and therefore deny the same.

76.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 76 of the Complaint and therefore deny the same.

77.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 77 of the Complaint and therefore deny the same.

78.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 78 of the Complaint and therefore deny the same.

79.

Defendants are without sufficient information to form a belief as to the allegations contained in paragraph no. 79 of the Complaint and therefore deny the same.

WCSR 38105066v7

80.

Defendants admit that they or some combination of them own the "LIGHT CITY Marks" as that term is defined in the Complaint.  Defendants deny that they have repeatedly claimed that neither BFAI nor BOPA have any ownership interest or right in the "LIGHT CITY Marks" but Defendants reserve the right to make such a claim.

81.

Denied.

82.

Defendants admit only that Exhibit 11 to the Complaint is a true and accurate copy of the "Articles of Organization" for Light City, LLC.  Defendants deny the remaining allegations contained in paragraph no. 82 of the Complaint.

83.

Denied.

84.

Admitted.

85.

Denied.

WCSR 38105066v7

86.

The allegations contained in paragraph no. 86 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

**Responding to "Count One, Lanham Act, 15 U.S.C. § 1125(a)"**

87.

Defendants repeat and restate each of the foregoing paragraphs of their Answer and Defenses.

88.

Denied.

89.

Denied.

90.

Denied.

91.

Denied.

92.

Denied.

93.

Denied.

WCSR 38105066v7

94.

Denied.

95.

Denied.

96.

Denied.

97.

The allegations contained in paragraph no. 97 of the Complaint are a statement and conclusion of law requiring no response from the Defendants and are therefore denied.

**Responding to "Count Two, Unfair Competition; Maryland law"**

98.

Defendants repeat and restate each of the foregoing paragraphs of their Answer and Defenses.

99.

Denied.

100.

Denied.

101.

Denied.

- 18 -

102.

Denied.

103.

Denied.

104.

Denied.

105.

Denied.

### Responding to "Relief Requested Under Both Claims"

Defendants deny that the Plaintiffs are entitled to any relief in this civil

action.

### DEFENSES

### First Defense

Plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs assert claims for unfair competition under the Lanham Act and Maryland

law.  To prevail on either of those claims, Plaintiffs must establish that they

possess the LIGHT CITY trademarks at issue in this case.  However, Plaintiffs

cannot establish possession because Defendants are the owners of the trademarks

at issue.  As is set forth in detail in Defendants' counterclaims, Defendants

engaged in substantial activities related to the LIGHT CITY trademarks including

- 19 -

publishing a brochure and video, creating a website and social media accounts, raising funds, conducting promotional events, hiring a consultant, winning grants and awards, receiving press coverage, and actually participating in the production of the 2016 LIGHT CITY festival and LIGHTCITYU innovation conferences.

**Second Defense**

Plaintiffs' claims are barred by the doctrine of unclean hands. Plaintiffs engaged in acts of fraud with regard to the Defendants. Plaintiffs repeatedly misrepresented to Defendants that they would enter into a "marriage" or "partnership" with Plaintiffs related to LIGHT CITY in which Defendants would own the innovation conference portion of the LIGHT CITY festival. Plaintiffs always recognized that Defendants were the owners of the LIGHT CITY marks as the "developers" of the festival, and even explicitly acknowledging in board meeting minutes that WWS would own the website URL's which is consistent with the understanding that Defendants would own the marks. Plaintiffs schemed to gain control of the LIGHT CITY festival by making these representations to Defendants to bait them into permitting Defendants to become involved in LIGHT CITY. When Plaintiffs ultimately used their superior size and financial strength to completely remove the Plaintiffs from the LIGHT CITY festival in 2017 and onward, Defendants incurred substantial damages. The acts of fraud committed by Plaintiffs as plead herein and in Defendants' Counterclaims, which are

- 20 -

incorporated herein in their entirety, prohibit Plaintiffs from requesting any equitable relief.

## Third Defense

Plaintiffs' claims are barred by the doctrines of estoppel and laches.  For the same reasons that the Plaintiffs claims are barred by the doctrine of unclean hands, their claims are barred by the doctrines of estoppel and laches.

## Fourth Defense

Plaintiffs' claims are barred by the doctrine of fair use.  Defendants have used the LIGHT CITY marks in many ways, including in media interviews and in marketing, truthfully describing their involvement in the festival.  These uses of the LIGHT CITY marks are protected by the doctrine of nominative fair use.

## Fifth Defense

Plaintiffs' claims are barred because there is no trademark infringement. Defendants can not infringe their own trademarks.  For the same reason that Defendants have failed to state a claim upon which relief can be granted because they do not possess the LIGHT CITY marks (First Defense), Plaintiffs' claims are barred because Defendants own the LIGHT CITY trademarks.

## Sixth Defense

Plaintiffs' claims are barred due to their acts of fraud or fraudulent inducement.  Plaintiffs acts of fraud are set forth above with regard to the Second

Defense of unclean hands and are plead in detail in Defendants' Counterclaims, which Counterclaims are incorporated herein in their entirety.

## Seventh Defense

Plaintiffs' claims are barred because certain terms of alleged contracts put at issue in the Complaint are ambiguous and unenforceable.  Plaintiffs cite a provision of an alleged contract at paragraph no. 41 of its Complaint.  This provision is ambiguous because it: (i) makes no reference to marks created and used before the alleged contract was created; (ii) is inconsistent with other agreements between the parties; (iii) does not contain any assignment of marks created or used before the alleged contract was created; (iv) does not address the existing ownership rights of the Allens or Light City, LLC in any trademarks or copyrights; and (v) does not specifically identify any alleged trademarks.

## Eighth Defense

Plaintiffs' claims are barred because certain terms of alleged contracts at issue in the Complaint are ambiguous and should be construed against the Plaintiffs.  Plaintiffs drafted the contractual provision set forth in paragraph no. 41 of the Complaint.  It is ambiguous for the reasons set forth in the Seventh Defense and should be construed against Plaintiffs because they drafted it.

WCSR 38105066v7

## Ninth Defense

Plaintiffs' claims are barred because they are in breach of the alleged contracts at issue in the Complaint.  Plaintiffs breached numerous alleged contracts with Defendants, including BFAI's obligation as the fiscal sponsor to pay WWS, Plaintiffs' agreement that Defendants would always own the innovation conference component of the LIGHT CITY festival as is plead in detail in Defendants' Counterclaims, which is incorporated herein in its entirety.

## Tenth Defense

Defendants reserve the right to assert additional defenses that become known to them during the pendency of this case.

WHEREFORE the Defendants respectfully pray that this Court:

(a)     dismiss each of Plaintiffs' claims with prejudice;

(b)     enter final judgment in favor of Defendants and against Defendants;

(c)     award the Defendants their fees and expenses incurred in defending this action; and

(d)     award the Defendants all other legal and equitable relief that is appropriate.

**DEFENDANTS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

WCSR 38105066v7

## COUNTERCLAIMS

Counterclaim Plaintiffs Brooke Allen ("Ms. Allen"), Justin Allen ("Mr. Allen"), and What Works Studio, LLC ("WWS") (collectively the "Counterclaim Plaintiffs") and file and serve this their Counterclaims as follows:

### The Parties

1.

Ms. Allen is an individual citizen of the State of Maryland.

2.

Mr. Allen is an individual citizen of the State of Maryland.

3.

WWS is a limited liability company organized pursuant to the laws of the State of Maryland.  The sole member of WWS is Ms. Allen.

4.

Plaintiff Mayor and City Council of Baltimore City ("Mayor and City Council") alleges that it is a municipal corporation organized and operating under the laws of the State of Maryland.

5.

Plaintiff Baltimore Festival of the Arts, Inc. ("BFAI") alleges that it is a non-stock, non-profit corporation organized and operating under the laws of the State of

WCSR 38105066v7

Maryland with its principal place of business at Ten East Baltimore Street, Tenth

Floor, Baltimore, Maryland 21202.

6.

Plaintiff Baltimore Office of Promotion & The Arts, Inc. ("BOPA") alleges

that it is a non-stock, not-for-profit corporation organized and operating under the

laws of the State of Maryland with its principal place of business at Ten East

Baltimore Street, Tenth Floor, Baltimore, Maryland 21202.

7.

This Court has subject matter jurisdiction over these Counterclaims.

8.

This Court is an appropriate venue for these Counterclaims.

9.

Mayor and City Council, BFAI, and BOPA (collectively the "Counterclaim

Defendants") are subject to the personal jurisdiction of this Court.

**Factual Allegations**

10.

Beginning in March 2010, Ms. Allen and Mr. Allen (collectively the

"Allens") conceptualized a festival to take place in the City of Baltimore that

would bring together public art light installations, innovation conferences, and live

music.

- 25 -

11.

The Allens' concept for the public art light installation component of the festival was to bring to Baltimore displays similar to those used in light festivals held in Sydney, Australia, Berlin, Germany, and Kobe, Japan.

12.

The Allens' concept for the innovation conference component of the festival was to bring progressive thought leaders to Baltimore to lead presentations and participate in panels similar to those held at events like South by Southwest (SXSW) in Austin, Texas and PopTech in Camden, Maine.

13.

The Allens further conceptualized that live music would be presented throughout the festival.

14.

On August 2, 2013, the Allens came up with the name, LIGHT CITY, for a new festival in Baltimore.

15.

The Allens believed that the LIGHT CITY brand could also be used for similar festivals that they would organize in other cities.

- 26 -

16.

On August 14, 2013, the Allens purchased the domain name "lightcity.us."

17.

On August 19, 2013, the Allens had their first telephone call with John Cammack who was a potential investor or sponsor of the LIGHT CITY festival and followed that telephone call up with an in-person meeting at the Stone Mill Bakery on September 3, 2013.

18.

Over the ensuing months, the Allens had numerous meetings with various prominent investors or sponsors for LIGHT CITY, including many prominent Baltimore citizens, businesses, and foundations, including, without limitation Baltimore Gas & Electric Company, the CEO of LifeBridge Health, the Warnock Foundation, and the Abell Foundation.

19.

On September 5, 2013, the Allens published a brochure describing the plans for the LIGHT CITY festival.  Between September 2013 and July 2014 the Allens presented the brochure and their plans for the LIGHT CITY festival in approximately sixty-five (65) different meetings with groups such as potential sponsors, investors, and partners and media members.

20.

A true and correct copy of the brochure described in the preceding paragraph is attached hereto as Exhibit "A."

21.

On October 28, 2013, the Allens participated in a Skype call with Ignatius Jones, an internationally known light festival director from Sydney, Australia, to discuss the LIGHT CITY festival.

22.

On November 7, 2013, the Allens met with Carolyn Blakeney, the Chief of Staff at the Baltimore City Council's President's Office, to present their plans for the LIGHT CITY festival.

23.

On December 19, 2013, Mr. Allen formed Light City, LLC in the State of Maryland ("Light City, LLC I"). The Allens were owners of Light City, LLC I. Light City, LLC I has since been dissolved.

24.

Light City, LLC I is not the Defendant identified in Plaintiffs' Complaint. The Defendant Light City, LLC was formed on July 21, 2016 ("Light City, LLC II"). Light City, LLC II is currently an active business entity with the Maryland Secretary of State. The members of Light City, LLC II are the Allens.

- 28 -

25.

On December 23, 2013, the Allens received the first verbal sponsorship commitment for the LIGHT CITY festival from LifeBridge Health which ultimately turned into a $25,000 sponsorship.

26.

On December 28, 2013 at 10:38 AM EST, the Allens published a video available at https://vimeo.com/82834095 titled "Say Hello to Light City" which explained their plans for the LIGHT CITY festival.

27.

In December 2013, the Allens secured and launched: (i) the LIGHT CITY Facebook page facebook.com/lightcitybaltimore; and (ii) the Twitter profile which is now called twitter.com/lightcitybmore but was originally called twitter.com/lightcityus.

28.

On January 13, 2014, the Allens launched the lightcity.us website.  The initial lightcity.us website can be viewed at:

https://web.archive.org/web/20140113015444/http://lightcity.us/

29.

The screenshot of the original lightcity.us website is attached hereto as Exhibit "B."

- 29 -

30.

On January 22, 2014, the Allens met with the Executive Director of the Waterfront Partnership of Baltimore ("Waterfront"), Laurie Schwartz, to discuss the plans for the Light City festival.  At the meeting, Waterfront offered to be the non-profit fiscal sponsor of the LIGHT CITY festival.

31.

On January 24, 2014, the Allens presented the plans for the LIGHT CITY festival to the Abell Foundation.

32.

On January 30, 2014, the Allens presented the plans for the LIGHT CITY festival at the Baltimore Social Innovation Journal pitch presentation organized by the Warnock Foundation.  Light City, LLC I was awarded two separate unrestricted grants by the Warnock Foundation in the amounts of $1,000 and $5,000, respectively.

33.

On February 3, 2014, the Allens presented the plans for the LIGHT CITY festival to then-Baltimore City Councilman William Cole.

- 30 -

34.

On February 5, 2014, Waterfront submitted a $250,000 grant proposal to the Abell Foundation in its capacity as the initial non-profit fiscal sponsor for the Light CITY festival.

35.

A true and correct copy of Waterfront's submission letter is attached hereto as Exhibit "C."

36.

On February 21, 2014, the Abell Foundation began providing $20,000 in funding to Light City, LLC I to organize the Light City festival, specifically to hire Ignatius Jones as a consultant.

37.

A true and correct copy of the letter from the Abell Foundation dated February 21, 2014 to Ms. Allen related to the $20,000 in funding is attached hereto as Exhibit "D."

38.

On March 7, 2014, Light City, LLC I signed a contract with Warehouse Pty Ltd an Australian management agency, to engage Ignatius Jones as a consultant.

39.

A true and correct copy of the contract for Mr. Jones' services is attached hereto as Exhibit "E."

40.

On March 24, 2014, Mr. Jones travelled to Baltimore to provide consulting services for the LIGHT CITY festival.

41.

On March 25, 2014, the Allens and Mr. Jones presented the plans for the LIGHT CITY festival to Baltimore Gas & Electric Company.

42.

On March 26, 2014, the Allens and Mr. Jones presented the plans for the LIGHT CITY festival to the Abell Foundation, Waterfront's Executive Committee and Visit Baltimore.

43.

On March 28, 2014, the Allens organized and hosted a LIGHT CITY festival reception for Mr. Jones and sponsors and potential sponsors at the Wit and Wisdom restaurant located at the Four Seasons Hotel Baltimore.  Attendees at this reception included representatives of many prominent companies, non-profits and foundations, and the Baltimore government, including without limitation the Abell Foundation, the Warnock Foundation, the Barnycz Group, the Mayor's Office of

- 32 -

Economic Development, Ayers Saint Gross, Brown Craig Turner, Cordish

Companies, Greater Baltimore Cultural Alliance, Baltimore Museum of Art,

Charles Street Development Corporation, Choose Maryland, Camden Partners,

Living Classrooms, Waterfront, Feats, Inc., EventEQ, Baltimore Angels, Baltimore

Emergency Management, GiveCorps, Regional Manufacturing Institute, ABS

Capital, and 3D Maryland.

44.

On March 30, 2014, the Allens and Mr. Jones discussed LIGHT CITY for

the first time with Bill Gilmore, the executive director of BOPA.

45.

On April 1, 2014, the Allens emailed a sponsorship proposal to Baltimore

Gas & Electric Company to be a lead sponsor of the LIGHT CITY festival.

Ultimately, Baltimore Gas & Electric Company sponsored the Light City festival

in the amount of $1,250,000.00 over two (2) years.

46.

Without the involvement of the Counterclaim Defendants, the Allens

secured leads that turned in to over $3,000,000.00 in sponsorship for the LIGHT

CITY festival over multiple years, including, without limitation, from Baltimore

Gas & Electric Company, Visit Baltimore, the Abell Foundation, and LifeBridge

Health.

- 33 -

47.

Waterfront arranged a meeting between the Allens and BOPA on July 14, 2014. Attending this meeting from BOPA were Bill Gilmore, Kathy Hornig, Rosalind Healy, Randy Vega, and Ryan Patterson.

48.

At the July 14, 2014 meeting with BOPA, the Allens made the same presentation related to the plans for the LIGHT CITY festival that they had given to other organizations.

49.

The BOPA representatives present at the July 14, 2014 meeting with the Allens expressed interest in the LIGHT CITY festival and suggested that discussions about the LIGHT CITY festival between the parties continue.

50.

The Allens met with BOPA again on August 7, 2014 at BOPA's office. Additional meetings between the Allens and BOPA took place in September and October 2014. Beginning in November 2014, the Allens and BOPA began a weekly recurring meeting to discuss the LIGHT CITY festival.

51.

Although BOPA had not become formally involved with the LIGHT CITY festival, on November 6, 2014, the Allens met Bill Gilmore at his home before the

- 34 -

Allens, Bill Gilmore, and Laurie Schwartz were scheduled to meet with Michael Crier, a board member of Baltimore Gas & Electric Company, to discuss fundraising for the LIGHT CITY festival.

52.

During their continuing meetings prior to December 14, 2014, Bill Gilmore proposed that BFAI could take on the role of the fiduciary agent or sponsor for the LIGHT CITY festival and that BOPA could be a production "partner" for the public art portion of the festival.

53.

During the continuing meetings, Bill Gilmore repeatedly represented to the Allens that they would produce and continue to own the innovation conferences if the Counterclaim Defendants became involved with producing certain aspects of the LIGHT CITY festival.

54.

During the continuing meetings, Bill Gilmore represented that BOPA did not have interest in the innovation conferences associated with the LIGHT CITY festival.  Bill Gilmore represented explicitly that all of BOPA's events are free and open to the public and that BOPA had no interest in being involved with ticketed events like the innovation conferences.

- 35 -

55.

During the continuing meetings, Bill Gilmore also repeatedly referred to the relationship of the Allens and BOPA as a "marriage" and also represented that BOPA and the Allens would enter into a "partnership" related to the LIGHT CITY festival in which partnership the Allens would have complete control over the innovation conferences while BOPA would concentrate its efforts on producing the public art installations and the music component of the LIGHT CITY festival.

56.

On December 14, 2014, Ms. Allen presented the plans for the Light City festival to the combined boards of BOPA and BFAI.  Bill Gilmore also made a presentation to the combined boards recommending that BFAI become the fiscal agent for the LIGHT CITY festival.

57.

The minutes of the December 14, 2014 board meeting reflect that the Allens are the "visionary founders" of the LIGHT CITY festival, that BFAI would be the "fiduciary" or fiduciary agent for the festival, and that WWS would own the LCB [LIGHT CITY BALTIMORE] URL's (or domain names).

WCSR 38105066v7

58.

The board minutes are consistent with the understanding of everyone involved that the intellectual property related to the LIGHT CITY festival was the property of the Allens.

59.

The minutes of the December 14, 2014 board meeting also memorialize that Bill Gilmore stated "[t]he division of duties will help [the Allens] business through the innovation component" which is consistent with the understanding of everyone involved that the Allens would produce the innovation conferences.

60.

In a February 2, 2016 Baltimore Business Journal article Bill Gilmore is quoted as acknowledging that BOPA generally creates events in-house, but that LIGHT CITY is unique because it is a "project developed by private citizens" which is a statement consistent with the understanding of everyone involved that the Allens owned the intellectual property related to the LIGHT CITY festival.

61.

The Allens would have never permitted the Counterclaim Defendants to be involved in the LIGHT CITY festival in any way, and certainly not as a fiduciary agent and responsible for producing any portion of the Light City festival, if they would not have continued ownership over the innovation conferences.

62.

The Allens intend that the innovation conferences are a for profit enterprise that will permit them to earn income related to the LIGHT CITY festival in Baltimore as well as similar LIGHT CITY festivals that may be held in other cities.

63.

On April 24, 2015, the Allens created the name LIGHTCITYU for the innovation conferences without the involvement of the Counterclaim Defendants. That same day, Ms. Allen purchased the lightcityu.com and lightcityu.org domain names.

64.

On April 27, 2015, Ms. Allen designed the logo for LIGHTCITYU.

65.

On September 11, 2015, Ms. Allen released the logo to the public for the LIGHTCITYU innovation conferences for the first time on the LIGHTCITYU Facebook page which the Allens started.

65A.

As part of the "partnership" or "marriage" with Plaintiffs, Counterclaim Plaintiffs were responsible for identifying speakers for the LIGHTCITYU innovation conferences. Counterclaim Plaintiffs obtained many speakers for free from their own network of contacts in addition to paid speakers. Counterclaim

Plaintiffs vetted the speakers and were responsible for booking them for the LIGHTCITYU innovation conferences.

65B.

The LIGHTCITYU innovation conferences consisted of four different tracks.  Those tracks were called Sustainability Innovation, Creative Innovation, Social Innovation, Health Innovation.  Counterclaim Plaintiffs were responsible for booking emcees for each of the four tracks.  Counterclaim Plaintiffs emceed and were the face of the Creative Innovation track during the LIGHTCITYU conferences.

65C.

Counterclaim Plaintiffs had responsibility for organizing the logistics of the LIGHTCITYU innovation conferences.

65D.

Counterclaim Plaintiffs had responsibility for coordinating relationships with sponsors for the LIGHTCITYU conferences and speaking at press conferences as the face of LIGHTCITYU.

65E.

Counterclaim Plaintiffs had responsibility for all marketing for the LIGHTCITYU conferences.  This responsibility included establishing and creating content in print and for social media, including, interviewing and promoting the

WCSR 38105066v7

speakers that they had booked.  Counterclaim Plaintiffs also designed all of the logos for the various tracks of the LIGHTCITYU conferences.

65F.

Counterclaim Plaintiffs had responsibility for LIGHTCITYU ticket sales, including digital outreach, email marketing, corporate outreach, and bulk ticket sales.

65G.

In addition to their responsibilities for LIGHTCITYU, Counterclaim Plaintiffs also arranged for various artists to exhibit their work in the public art portion of the LIGHT CITY festival.

65H.

Counterclaim Plaintiffs organized volunteers for the LIGHTCITYU conferences and the public art portion of the LIGHT CITY festival.  Counterclaim Plaintiffs organized over 100 volunteers to participate.

65I.

Counterclaim Plaintiffs also had responsibility for developing the footprint in the City of Baltimore for the public art portion of the LIGHT CITY festival.

66.

Toward the end of 2015, the relationship between the Allens and the Counterclaim Defendants began to sour.  For example, the Counterclaim

- 40 -

Defendants barred the Allens from speaking at the first press conference for the LIGHT CITY festival, did not include them in fundraising meetings, and otherwise began to take steps to diminish their role without speaking to the Allens.

67.

The actions of the Counterclaim Defendants in excluding the Allens from events are consistent with their plan to wrest control of the LIGHT CITY festival from the Allens and expropriate the intellectual property related to the LIGHT CITY festival for their own use.

68.

On January 20, 2016, the Allens met with various representatives of the Counterclaim Defendants at BOPA's office. At this meeting, Bill Gilmore, Kathy Hornig, and Chuck Adkins of BOPA informed the Allens that the Counterclaim Defendants would not "permit" the Allens to produce or have an ownership stake in the LIGHTCITYU innovation conferences because they had been informed by the "City" that the Counterclaim Defendants would need to take control and own all aspects of the LIGHT CITY festival. During this meeting Bill Gilmore referred to a signed proposal executed by BFAI on July 22, 2015 entitled "LIGHTCITYU LETTER OF AGREEMENT" and stated repeatedly that the document "means nothing."

69.

The position taken by the representatives of the Counterclaim Defendants at the January 20, 2016 meeting is inconsistent with the many representations described herein made by the Counterclaim Defendants and their representatives related to the relationship of the Counterclaim Plaintiffs and Counterclaim Defendants.

70.

The inaugural LIGHT CITY festival and LIGHTCITYU innovation conference took place between March 28 and April 3, 2016 in Baltimore. Counterclaim Plaintiffs had responsibility for the day-to-day operation of the LIGHTCITYU conferences and were the emcees and face of the Creative Innovation LIGHTCITYU conference track.  Counterclaim Plaintiffs' daily responsibilities for the Creative Innovation LIGHTCITYU conference track included opening and closing daily presentations, introducing speakers, and providing commentary in between speakers.

71.

On May 11, 2016, the Allens received an email from Bill Gilmore in which he informed them that BOPA intended "to bring the conference booking in house using BOPA staff for 2017."  In other words, Bill Gilmore informed the Allens that they would have no more involvement with producing the innovation conferences for the LIGHT CITY festival going forward.  In addition, without informing the Allens, they were removed from the LIGHT CITY steering committee, the LIGHT CITY chairman's council, the LIGHT CITY innovation subcommittee, and the LIGHT CITY marketing and communications subcommittee.  Additionally, WWS was removed as a BFAI board member.

72.

The Counterclaim Defendants had no right to inform the Allens that they would be barred from being involved in a festival that they organized and of which they owned the intellectual property rights.

73.

The Counterclaim Defendants have willfully and improperly asserted control over the LIGHT CITY trademark owned by the Allens and all derivations thereof such as LIGHT CITY BALTIMORE, LIGHTCITYU, and LABS@LIGHT CITY (collectively the "LIGHT CITY Marks") and are infringing upon the Allens'

LIGHT CITY Marks by organizing and promoting the 2017 LIGHT CITY festival in Baltimore without permission or license to use the LIGHT CITY Marks.

74.

Further, the Counterclaim Defendants have violated the Allens' rights by commandeering the LIGHT CITY festival social media accounts created, nurtured, and grown by the Allens.  With regard to the LightCityU Facebook, Instagram, and Twitter accounts, the Counterclaim Defendants even gained control over the accounts changed the name of the accounts to "labslightcity," "labsatlightcity," and "@lightcitylabs," respectively, without the authorization of the Allens which is a source of serious confusion to the public.

75.

The Counterclaim Defendants have stopped referring to the innovation conferences as LIGHTCITYU and are now referring to the innovation conferences as "Labs@LightCity" and intend to begin selling tickets on November 11, 2016 to the rebranded "Labs@LightCity" without the consent of the Allens.

76.

The Allens have received substantial press coverage related to their roles with the LIGHT CITY festival including in multiple articles in the Baltimore Sun, Baltimore Magazine, and the Baltimore Business Journal, as well as in television media, and various internet publications.  Further, the Allens have won awards for

the LIGHT CITY festival including the Baltimore Innovation Awards "Artist/Creative Group of the Year" for 2015.  The media coverage and awards received by the Allens have the effect of associating them with the LIGHT CITY festival as the founders or owners.

77.

BFAI has failed and refused to pay WWS for work that it requested that WWS perform in BFAI's capacity as the fiduciary agent for the 2016 LIGHT CITY festival.

**COUNT I**
**Lanham Act, 15 U.S.C. § 1125(a)**
**(Allens v. Counterclaim Defendants)**

78.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

79.

The Allens own common law trademark rights in the LIGHT CITY Marks throughout the United States and the State of Maryland.

80.

The Allens have a real and substantial interest in having this Court determine that they own the LIGHT CITY Marks so as to protect the ability of the

- 45 -

Allens to make use of the LIGHT CITY Marks in connection with Light City

festivals held in Baltimore and that may be held in other cities in the future.

81.

The LIGHT CITY Marks that the Allens own are distinctive when used in

connection with light festivals and related innovation conference events by virtue

of the exclusive and extensive use of the LIGHT CITY Marks in commerce by the

Allens and the association of the public of the Allens with the LIGHT CITY

festival due to the substantial media coverage and awards that the Allens have

received related to the LIGHT CITY festival.

82.

The expropriation, copying, imitation, and use of the LIGHT CITY Marks

owned by the Allens by the Counterclaim Defendants to promote a Light City

festival in Baltimore is without the permission, license, or authority of the Allens.

83.

The activities of the Counterclaim Defendants in using, imitating, and

copying the LIGHT CITY Marks owned by the Allens is likely to and has already

lead to and resulted in consumer confusion, mistake, and deception, and is likely to

cause and is already causing consumers to believe that the Counterclaim

Defendants own the LIGHT CITY Marks, while simultaneously causing

consumers to believe that the Allens have authorized, licensed, or are otherwise

WCSR 38105066v7

connected or affiliated with Counterclaim Defendants' business activities all to the detriment of the Allens.

84.

The acts of the Counterclaim Defendants violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.

The acts of the Counterclaim Defendants in using, imitating, and copying the LIGHT CITY Marks owned by the Allens as alleged herein are and continue to be willful.

86.

As a direct and proximate result of the conduct of the Counterclaim Defendants the Allens have sustained and will continue to sustain substantial damages.

87.

As a direct and proximate result of the conduct of the Counterclaim Defendants the Allens will continue to sustain irreparable injury for which no adequate remedy at law exists.

88.

An actual controversy with regard to the ownership of the LIGHT CITY Marks exists within the meaning of 28 U.S.C. § 2201.

**COUNT II**
**Unfair Competition Under Maryland Law**
**(Allens v. Counterclaim Defendants)**

89.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

90.

The Allens own common law trademark rights in the LIGHT CITY Marks throughout the United States and the State of Maryland.

91.

The Allens have a real and substantial interest in preventing unfair competition that causes confusion among the public with regard to the LIGHT CITY Marks.

92.

The conduct of the Counterclaim Defendants of expropriating the LIGHT CITY Marks as their own and claiming exclusive ownership of the LIGHT CITY Marks for the purpose of trading off the reputation and goodwill of the Allens is likely to cause confusion among the public and damage to the reputation of the Allens, and is likely to damage the good will that the Allens have developed in the LIGHT CITY Marks.

- 48 -

93.

The acts of the Counterclaim Defendants as alleged herein constitute unfair competition under Maryland law.

94.

The acts of the Counterclaim Defendants in using, imitating, and copying the LIGHT CITY Marks as alleged herein are and continue to be willful.

95.

As a direct and proximate result of the conduct of the Counterclaim Defendants, the Allens have sustained and will continue to sustain substantial damages.

96.

As a direct and proximate result of the conduct of the Counterclaim Defendants, the Allens have sustained and will continue to sustain irreparable injury for which no adequate remedy at law exists.

**COUNT III**
**Trademark Infringement Under Maryland Law**
**(Allens v. Counterclaim Defendants)**

97.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

98.

As described above, the Allens own all rights, title, and interest in and to the LIGHT CITY Marks.

99.

As described above, the LIGHT CITY Marks are distinctive and the Allens have built up valuable goodwill in the LIGHT CITY Marks.

100.

The Counterclaim Defendants' use of the LIGHT CITY Marks infringes the Allens' rights therein and has will continue to cause confusion, mistake, or deception among consumers as to the source, sponsorship, and origin of the LIGHT CITY festival that the Counterclaim Defendants intend to hold in 2017 and are actively promoting.

101.

The Counterclaim Defendants' conduct deceives or is likely to deceive, and has caused and is likely to continue to cause, confusion or mistake among actual and prospective customers of the LIGHT CITY festival by passing off the Counterclaim Defendants' event as having been sponsored or otherwise approved or connected with the Allens.

102.

As a direct and proximate result of the Counterclaim Defendants'
infringement of the Allens' common law trademark rights under the State of
Maryland and other common law, the Allens have sustained and are likely to
continue to sustain monetary damages and irreparable injury to their business,
reputation, and goodwill.

103.

The Allens have no adequate remedy at law.

104.

By reason of the foregoing acts, the Counterclaim Defendants are liable to
the Allens for trademark infringement and the Allens are therefore entitled to
permanent injunctive relief and monetary damages, including punitive damages by
reason of the Counterclaim Defendants' willful, reckless, deliberate, and
intentional conduct.

**COUNT IV**
**Unfair Trade Practices Under Md. Code Com. Law § 13-301, et seq.**
**(Allens v. Counterclaim Defendants)**

105.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the
preceding paragraphs of their Counterclaims.

- 51 -

WCSR 38105066v7

106.

As described above, Counterclaim Defendants have engaged in unfair or deceptive trade practices by making, in the course of selling and offering to sell Counterclaim Defendant's products, false, falsely disparaging, and misleading statements, visual descriptions, and other representations which have the capacity, tendency, or effect of deceiving or misleading consumers.

107.

As described above, Counterclaim Defendants have engaged in unfair or deceptive trade practices by representing to consumers, in the course of selling and offering to sell Counterclaim Defendants' products, that Counterclaim Defendants' products have a source, sponsorship, and characteristic that they do not have and that Counterclaim Defendants' products are of a standard, quality, grade, style, and model which they are not.

108.

Counterclaim Defendants' false and misleading representations and deceptive conduct are material in that the same have caused and are likely to cause prospective consumers of the Allens' and Counterclaim Defendants' products to be deceived as to the source, sponsorship, characteristics, status, affiliation, connection, standard, quality, grade, style, and model of the Allens' products and

WCSR 38105066v7

Counterclaim Defendants' products, or as to the identity of the person to whom rights belong.

109.

By reason of Counterclaim Defendants' unfair and deceptive trade practices as defined by Section 13-301 of Maryland's Consumer Protection Act, Counterclaim Defendants have violated Section 13-303 of Maryland's Consumer Protection Act.

110.

As a direct and proximate result of said unfair and deceptive trade practices, the Allens, as well as consumers, have sustained and are likely to continue to sustain damages.

111.

The Allens have no adequate remedy at law.

112.

Pursuant to Sections 13-406 and 13-408 of Maryland's Consumer Protection Act, the Allens are entitled to enjoin the Counterclaim Defendants' unlawful conduct as well as obtain compensatory damages, punitive damages, and attorney's fees.

- 53 -

## COUNT V
## Unjust Enrichment
## (Allens v. Counterclaim Defendants)

### 113.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

### 114.

The Allens have been denied financial compensation in connection with Counterclaim Defendants' use of the LIGHT CITY Marks.

### 115.

The Counterclaim Defendants have been enriched and will continue to be enriched by their use of the LIGHT CITY Marks in connection with the LIGHT CITY festival in such a manner that the goodwill embodied by the Allens' LIGHT CITY Marks has inured to the benefit of the Counterclaim Defendants. The circumstances are such that equity and good conscience require the Counterclaim Defendants to make restitution to the Allens in an amount to be proven at trial.

## COUNT VI
## Fraud / Fraudulent Inducement
## (Counterclaim Plaintiffs v. Counterclaim Defendants)

### 116.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

WCSR 38105066v7

117.

The Allens created the name "Light City" for the Light City festival in Baltimore and own common law trademark rights in the LIGHT CITY Marks and all derivations thereof throughout the United States and the State of Maryland by virtue of their first use of the LIGHT CITY Marks in commerce.

118.

In order to induce the Allens into allowing BFAI to serve as the fiduciary agent for the LIGHT CITY festival, the Counterclaim Defendants acting through Bill Gilmore falsely represented that BOPA had no interest in taking ownership of the innovation conferences at the LIGHT CITY festival, referred to the relationship between the Counterclaim Defendants and the Allens as a "marriage", and that the parties would enter into a "partnership" related to the LIGHT CITY festival which partnership would permit the Allens to have complete control over the innovation conferences.

119.

The Counterclaim Defendants knew that the statements made by Bill Gilmore acting on their behalf were false and that the Counterclaim Defendants intended to expropriate the Allens' LIGHT CITY festival and related intellectual property including the LIGHT CITY Marks for their own use once they were able to become involved in LIGHT CITY.

- 55 -

120.

The statements made by Bill Gilmore were made for the purpose of defrauding the Allens and WWS, specifically to obtain access to and assert control over the LIGHT CITY festival and LIGHT CITY Marks that the Counterclaim Defendants did not own and to induce WWS into submitting various proposals to BFAI for work related to the LIGHT CITY festival.

121.

The Allens and WWS relied on Bill Gilmore's false statements and had the right to rely upon those statements in the full belief of their truth.  The Allens never would have permitted BFAI to become the fiduciary agent for the LIGHT CITY festival or BOPA to become involved in the LIGHT CITY festival at all and WWS would never have submitted proposals to work on the LIGHT CITY festival but for these misrepresentations.

122.

Due to the Counterclaim Defendants' acts of fraud, the Counterclaim Plaintiffs have suffered damage directly resulting from the fraudulent misrepresentations in an amount to be determined at the trial of this action.  This fraud also invalidates any proposals that WWS may have entered into with the Counterclaim Defendants.

123.

Further, the Counterclaim Plaintiffs are entitled to recover punitive damages form the Counterclaim Defendants due to their acts of fraud which were deliberate and done with evil motive.

**COUNT VII**
**Quantum Meruit**
**(Counterclaim Plaintiffs v. Counterclaim Defendants)**

124.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

125.

The Counterclaim Plaintiffs conferred numerous benefits upon the Counterclaim Defendants related to the 2016 LIGHT CITY festival.

126.

The Counterclaim Defendants appreciated and knew that the Counterclaim Defendants were conferring benefits upon them related to the LIGHT CITY festival.

127.

The Counterclaim Defendants accepted and retained the benefits conferred upon them by the Counterclaim Plaintiffs such as to make it inequitable for the

Counterclaim Defendants to retain the benefits conferred upon them related to the LIGHT CITY festival without the benefit of its value.

128.

The Counterclaim Plaintiffs are entitled to recover damages from the Counterclaim Defendants to be determined by a jury at the trial of this action related to the improper retention of the benefits conferred upon them related to the LIGHT CITY festival by the Counterclaim Defendants.

**COUNT VIII**
**Civil Conspiracy**
**(Counterclaim Plaintiffs v. Counterclaim Defendants)**

129.

Counterclaim Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs of their Counterclaims.

130.

The Counterclaim Defendants formed a confederation by agreement or understanding to: (i) defraud and expropriate from the Allens the LIGHT CITY Marks and assert control over the LIGHT CITY festival that the Allens had conceptualized and organized by intentionally and willfully misrepresenting to the Allens that the parties would engage in a "partnership" or "marriage" related to the LIGHT CITY festival in which the Allens would retain full control over the innovation conferences; and (ii) fraudulently induce WWS into submitting various

- 58 -

proposals to BFAI as the fiduciary sponsor for the LIGHT CITY festival despite the fact that the Counterclaim Defendants had no intention of compensating WWS in full for the work that it performed related to the LIGHT CITY festival.

131.

The Counterclaim Plaintiffs have been actually damaged by the tortious acts perpetrated by the Counterclaim Defendants in furtherance of their conspiracy to expropriate the LIGHT CITY Marks, gain control of the LIGHT CITY festival, and receive work requested from WWS without paying for it. The Counterclaim Plaintiffs are entitled to recover theses damages and punitive damages in an amount to be determined by a jury at the trial of this action.

WHEREFORE the Counterclaim Plaintiffs respectfully request that this Court:

(a)     Enter judgment against the Counterclaim Defendants on each of the claims set forth in these Counterclaims; and

(b)     Permanently enjoin the Counterclaim Defendants and their respective officers, directors, and agents from: (i) infringing or using the LIGHT CITY Marks or any mark confusingly similar thereto in connection with the advertising, promotion, offering for sale, or sale of any product or service; (ii) unfairly competing with the Allens; and (iii) using or attempting to use any social media

accounts or websites, or interfering with the use of any social media accounts or websites related to the LIGHT CITY festival; and

(c)      Order that the Counterclaim Defendants return control of all social media accounts created by the Counterclaim Plaintiffs to the Counterclaim Plaintiffs; and

(d)      Award compensatory damages to the Counterclaim Plaintiffs in an amount to be determined at trial; and

(e)      Award punitive damages to the Counterclaim Plaintiffs in an amount to be determined at trial; and

(f)      Award costs and attorneys' fees to the Counterclaim Plaintiffs; and

(g)      Enter a judgment declaring that the Allens are the exclusive owners of all rights in the LIGHT CITY Marks throughout the United States and that the Counterclaim Defendants have no rights whatsoever in the LIGHT CITY Marks; and

(h)      Award the Counterclaim Plaintiffs all such other and further relief as the Court deems just and proper.

## COUNTERCLAIM PLAINTIFFS DEMAND
## A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted this 23rd day of December, 2016.

WCSR 38105066v7

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Julie A. Hopkins
Fed. Bar. No. 28025

100 Light Street
26th Floor
Baltimore, Maryland 21202
Telephone:  (410) 545-5800
Facsimile:  (410) 545-5801
Email:      jahopkins@wcsr.com

/s/ Arthur A. Ebbs
Arthur A. Ebbs
*Admitted Pro Hac Vice*

271 17th Street NW
Suite 2400
Atlanta, Georgia 30363
Telephone:  (404) 872-7000
Facsimile:  (404) 888-7490
Email:      aebbs@wcsr.com

**Attorneys for Defendants / Counterclaim Plaintiffs**

WCSR 38105066v7